Walter P. Rolland v. Commissioner.
Rolland v. Commissioner
Docket No. 30190.
United States Tax Court
1953 Tax Ct. Memo LEXIS 372; 12 T.C.M. (CCH) 124; T.C.M. (RIA) 53048; February 13, 1953
*372 The petitioner was a substantial stockholder in a corporation engaged in the sale and servicing of new and used trucks. The corporation acquired real estate and began the construction thereon of a building to be used in its business. Because of the freezing of truck manufacture and sales incident to the war the corporation decided not to complete the building. The petitioner thereupon purchased the building in its incomplete state for less than its book value. 1. Held, the book value was not the equivalent of fair market value. 2. Held, further, the petitioner paid not less than fair market value for the building and realized no taxable income on the transaction. William R. Frazier, Esq., and James P. Hill, Esq., for the petitioner. Ralph V. Bradbury, Jr., Esq., for the respondent. TIETJENS
Memorandum Findings *373 of Fact and Opinion TIETJENS, Judge: The respondent determined a deficiency in income tax for 1943 of $7,770.85. The year 1942 is involved because of the Current Tax Payment Act of 1943. The only issue is whether the petitioner received taxable income in 1942 when he purchased an uncompleted building from a corporation in which he was a substantial shareholder at a price of $13,354.12 less than the value of the property as shown by the corporate books on the date of the sale. An uncontested adjustment can be reflected in a Rule 50 computation. Findings of Fact The stipulated facts are so found and incorporated herein by reference. The petitioner is an individual residing in Melbourne, Florida. During the years 1942 and 1943 he resided in West Hartford, Connecticut. His individual income tax returns for those years were filed with the collector for the district of Connecticut. The Rolland Motor Company, Inc. (hereafter sometimes called the corporation) was incorporated in Connecticut in 1937 with its principal place of business in East Hartford, Connecticut. Through the year 1941 the corporation was engaged in the business of selling, repairing and servicing new and used *374 trucks under franchise from the General Motors Truck and Coach Division. It also sold truck parts. During 1942 and 1943 the petitioner was president and treasurer of the corporation. Of the corporate stock 32.24 per cent was held by the petitioner and the remainder by his wife. On February 25, 1941, the petitioner acquired a parcel of unimproved real estate located in East Hartford at a cost to him of $5,850. The parcel was acquired for the purpose of constructing thereon a new place of business for the corporation. On October 14, 1941, the petitioner conveyed this parcel to the corporation in return for its unsecured promissory demand note in the amount of $10,000. Between the date of its acquisition and its conveyance to the corporation the property had been cleared and filled at an expenditure of about $2,500. In early November of 1941 the corporation began the construction of a building thereon on a cost plus basis. The estimated cost of the building was $50,000. To assist in the financing a subsidiary of General Motors, Inc. agreed to advance half the cost. The repayment of this advance was personally guaranteed by the petitioner. The construction funds were to be placed *375 in an escrow account with a bank and disbursed on the architect's certificates of approval. The beginning of World War II brought uncertainty to the corporation's business. Early in January 1942 the sale of trucks was frozen by the Government. The manufacture of new trucks was also restricted. Because of these conditions the corporation in January 1942 abandoned plans for occupying the building which was still in the course of construction. Efforts were made to bail out of the transaction without loss by sale or rental, without success. In January 1942 the petitioner consulted M. M. Andrews, a commercial and industrial realtor of Hartford, Connecticut, with reference to what should be done with the building. Andrews advised that the building should be completed and then rented or sold; otherwise the value of the property was problematical. At that time the foundation was in, the fabricated steel work was in place, and part of the brick work completed. In that state Andrews estimated the fair market value of the building to be $18,000. On March 17, 1942, the real estate in question was conveyed to the petitioner together with the funds remaining in the escrow account described *376 above. The consideration paid for this real estate was $13,354.12 less than the book value. The computation of such difference is shown as follows: Book value of real estate per books
of Rolland Motor Company, Inc.
$42,201.57
Cash in escrow received by peti-
tioner
15,554.07
Total
$57,755.64
Cost to petitioner: Notes payable assumed
$29,713.60
Corporation notes pay-
able to petitioner - for-
given
14,687.92
$44,401.52
Difference
$13,354.12
Among the $14,687.92 in notes receivable shown in the above computation was the note for $10,000 given the petitioner by Rolland Motor Company, Inc., for the purchase of the land on October 14, 1941. No payment had ever been made on this note prior to the time of cancellation. The $29,713.60 in notes payable assumed by petitioner was the $25,000 which General Motors had placed in escrow plus the interest and financing charges. After the petitioner reacquired the real estate, construction continued until the building was completed in the summer of 1942. The building was completed by the same contractor and architect who initially undertook the construction and in accordance with the original contract. *377 The completion involved an additional cost to the petitioner of $23,192.65. In May of 1942 petitioner leased the said real estate to the New England Transportation Company to whom it was sold in 1944 for $85,000. On January 12, 1942, at the petitioner's request, the franchise under which the corporation sold new trucks was cancelled and a new franchise granting petitioner the right to sell new trucks individually was issued. The consideration passing from the petitioner to the corporation aggregating the sum of $44,401.52 on March 17, 1942, was not less than the fair market value of the property in question on said date. Opinion In the statement accompanying his notice of deficiency the respondent explained that the deficiency was being determined because "The difference between the cost to you (the petitioner) of the property purchased from Rolland Motor Company, Inc., and the book value of such property, as shown by the books of the company, represents taxable income to you." The petitioner attacks this determination as being faulty, asserting that the correct determination should have been, in effect, that the fair market value of the property purchased was in excess *378 of the purchase price, instead of the book value of the property being in excess thereof. This attack on the sufficiency of the notice of deficiency is not well taken. It is merely an argument relating to the theory on which the deficiency was determined. See Mertens, Law of Federal Income Taxation, Volume 9, section 49.14. Be that as it may, in order to sustain the deficiency it would have to appear either that the "book value" and "fair market value" of the property were equivalent or that the price paid for the property was less than its fair market value. The respondent's determination as we see it is tantamount to a determination that the "fair market value" and the "book value" were equivalent. The burden was thus on the petitioner to prove otherwise. We think this burden has been sustained and we have found as a fact that the purchase price paid by the petitioner was not less than the fair market value of the property. This is but another way of saying that the book value and fair market value were not equivalent. The facts are not complicated and no purpose would be served by extensive discussion of them. There was testimony by a real estate man experienced in industrial *379 real estate in Hartford that the property in its incomplete state in January 1942 was worth approximately $18,000. Andrews, the real estate man, based his estimate on the fact that the building was a one purpose building, it was not complete and war conditions made it difficult to complete, the neighborhood was a poor one, and the land was of irregular shape. During February and March approximately $7,300 additional was spent on the building. Efforts were made to sell at book value, without success, in January. In March the petitioner paid the corporation $44,401.52 for the property. It cost the petitioner something in excess of $23,000 to complete the building after he acquired it in March 1942. These facts are not controverted. Because of the relationship of the petitioner to the corporation this was not an arm's length transaction. Nevertheless, the state of the outlook for the corporate business at the time of the sale would indicate that it was better for the corporation to dispose of the building than to assume further risk in its construction. It was a bona fide transaction. After careful consideration of the whole record we conclude that what the petitioner paid for the property *380 was at least equal to its fair market value. The respondent introduced no evidence of fair market value other than the effect of his determination that book value was the same as market value. That alone can not establish the fact and the fair inference from the other facts of record indicate that it was not. This makes it unnecessary to go into any question as to whether the distribution of the spread in price was in the nature of a distribution of earnings or profits taxable as a dividend. There was no spread. See ; ; Stanley, Bargain Sales to Stockholders, New York University Eighth Annual Institute on Federal Taxation, 779. Decision will be entered under Rule 50.